**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
POWER UP LENDING GROUP, LTD,

                                  Plaintiff,

     -against-

PROTO SCRIPT PHARMACEUTICAL CORP.,

                                Defendant.
-------------------------------------------------------------X

**AMENDED REPORT AND RECOMMENDATION**

CV 17-4083 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Power Up Lending Group, LTD. ("Plaintiff" or "Power Up") commenced this action against Defendant Proto Script Pharmaceutical Corp ("Defendant" or "Proto Script") alleging, among other things, default on a promissory note. *See generally* Complaint ("Compl.") [DE 1].

Proto Script's counsel entered an appearance in this action on August 3, 2017 [DE 5] and subsequently filed an Answer on behalf of Proto Script on September 19, 2017 [DE 14]. Following limited discovery, which included Proto Script's failure to timely serve Rule 26(a) Initial Disclosures [DE 19-20] and failure to respond to discovery requests [DE 21-22], Proto Script's counsel moved to be relieved as counsel of record [DE 24]. On March 6, 2018, Judge Spatt, who was then assigned to this case,[1] permitted Proto Script's counsel to withdraw and gave Proto Script 30 days to retain new counsel. DE 26. Proto Script failed to retain new

---

[1]     This matter was reassigned to District Judge Hurley on June 30, 2019. *See* June 30, 2019 Electronic Order.

counsel on its behalf, as is required under Second Circuit law for a corporate entity.  *See Grace v. Bank Leumi Trust Co. of N.Y.,* 443 F.3d 180, 192 (2d Cir. 2006).

On October 1, 2020, the Clerk of the Court entered a Certificate of Default against Proto Script, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  DE 29.  Power Up moved for entry of default judgment against Proto Script on October 2, 2020.  *See* Plaintiff's Notice of Motion for Entry of Default Judgment ("Pl.'s Not. of Mot.") [DE 30].  Judge Hurley referred the motion to this Court for a Report and Recommendation as to whether the motion should be granted and, if so, the appropriate amount of damages, costs, and/or fees, if any, to be awarded.  *See* October 2, 2020 Electronic Order.  For the reasons which follow, the Court respectfully recommends to Judge Hurley that Power Up's motion be GRANTED.

**II.    BACKGROUND**

    **A.    Factual Background**

The following facts are taken solely from the Complaint and are accepted as true for purposes of the instant motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Power Up is a corporation organized and existing under the laws of the Commonwealth of Virginia[2] and maintains an office in Nassau County, New York.  Compl. ¶ 7; Convertible Promissory Note at 1, attached as Ex. A to the Affidavit of Curt Kramer ("Kramer Aff.") [DE 30-2]; Securities Purchase Agreement, attached as Ex. B to Kramer Aff. [DE 30-3] at 1.  Proto Script is a corporation organized and existing under the laws of the State of Nevada, with an office in the City of Rancho Cucomonga, California.  *Id.* ¶ 8.  Power Up invests in publicly

---

[2] The Complaint alleges that Power Up is a corporation organized and existing under the laws of the State of New York.  Compl. ¶ 7.  However, the Note and Loan Agreement provide that Power Up is a Virginia corporation.  Convertible Promissory Note at 1, Ex. A to the Kramer Aff.; Securities Purchase Agreement at 1, Ex. B to the Kramer Aff.

2

traded "nano-cap" companies, otherwise known as "penny stock companies," whose securities are traded on the over-the-counter market. *Id.* ¶ 2. These companies are often capital constrained which hinders their access to banks or investment firms. *Id.*; Kramer Aff. ¶ 3. It is Power Up's practice to provide capital to such companies in return for shares purchased at a discount to market price. *Id.* Proto Script is one such penny stock company in which Power Up invested. *See id.*

On January 31, 2017, Proto Script, as the borrower, executed and delivered to Power Up a Convertible Promissory Note in the amount of $203,500.00 (the "Note"). *Id.* ¶ 12. The Note was issued pursuant to a Securities Purchase Agreement (the "Purchase Agreement") which provides for "certain issuances of, and conversion rights in and to, [Proto Script's] stock." *Id.*; Kramer Aff. ¶ 4. The Note and Purchase Agreement (collectively, the "Instruments") "provid[ ] that the venue for any action for lawsuit between the parties would be in the State of New York, County of Nassau and that the instruments would be governed by and construed in accordance with the laws of the State of Virginia." *Id.* ¶ 13; Kramer Aff. ¶ 5. The Note also provides that Proto Script must remain current in its filing obligations under the Exchange Act of 1933. *Id.* ¶ 14; Kramer Aff. ¶ 6.

Proto Script failed to file its Form 10K Annual Report with the Securities and Exchange Commission (the "SEC") covering the period ending December 31, 2016, which was due to be filed by March 30, 2017. *Id*. ¶ 15; Kramer Aff. ¶ 7. Under the terms of the Note, the failure to file the required SEC filings constitutes an event of default and breach. *Id*. ¶¶ 15-16. In such circumstances, Section 3.9 of the Note provides that Power Up is entitled to recover 150% of the outstanding principal amount of the Note, together with accrued and unpaid interest and default interest. *Id*. ¶ 16; Kramer Aff. ¶ 9. On April 24, 2017, Power Up sent a letter notifying Proto

3

Script of its default under the Note. *Id.* ¶ 17; Notice of Default, attached as Ex. D to Kramer Aff. [DE 30-5]. In total, Power Up claims it has been damaged "in the amount not less than $305,250, together with interest and default interest." *Id.* ¶¶ 3, 18.

Based on the these allegations, Power Up asserts the following causes of action against Proto Script: (1) "Promissory Notes Defaults," (2) "Breach of Contract – Lost Profits;" (3) "Breach of Contract – Litigation Expenses;" (4) "Violations of Section 10(b) of the Exchange Act and Rule 10(b)-5b;" and (5) "Injunctive and Equitable Relief." *Id.* ¶¶ 11-44.

### B.     Procedural History

On July 11, 2017, Power Up commenced this action against Proto Script. *See generally* Compl. Proto Script's counsel entered an appearance on August 3, 2017 [DE 5] and subsequently filed an Answer on behalf of Proto Script on September 19, 2017. DE 14. An Initial Conference was held on September 22, 2017, at which ctime ounsel for both parties appeared. DE 16. At that time, a discovery schedule was adopted, a deadline for the parties' exchange of Rule 26(a) Initial Disclosures was set and a Discovery Status Conference was scheduled for February 2, 2018. DE 16. After the deadline to exchange Rule 26(a) Initial Disclosures had passed, Power Up's counsel advised the Court on October 19, 2017 that Proto Script had failed to produce its disclosures within the time allotted by the Court. DE 19. As a result, Proto Script produced its Rule 26(a) Initial Disclosures later that day. DE 20. On January 9, 2018, Power Up's counsel advised the Court that Proto Script failed to produce responses to Power Up's discovery demands and sought judicial intervention to compel the responses. DE 21. In response, Proto Script's counsel stated that he was having issues communicating with Proto Script's representative and, consequently, intended to file a motion seeking to relieve is law firm, Phillipson & Uretsky, LLP as counsel of record for Proto Script.

4

DE 22.  In light of the anticipated filing of such a motion, the Court adjourned without date the scheduled Discovery Status Conference pending resolution of the motion.  *See* February 1, 2021 Electronic Order.

As a result of Proto Script's failure to adequately communicate with its counsel, among other things, its counsel filed a motion on January 31, 2018, pursuant to Local Civil Rule 1.4, to withdraw the law firm of Phillipson & Uretsky, LLP, by Jonathan Uretsky, Esq., as counsel of record.  DE 24-1 ¶¶ 14-15.  On March 6, 2018, Judge Spatt granted the motion and gave Proto Script 30 days to retain new counsel.  DE 26.  Proto Script failed to retain new counsel to appear on its behalf and failed to participate further in this action.

After there had been no activity on the docket for some time, Judge Hurley ordered Power Up to show cause why the case should not be dismissed for failure to prosecute the action.  *S*ee September 16, 2020 Electronic Order.  In response, Power Up stated that it had previously made attempts to settle the action to no avail, and that it was otherwise hamstrung from moving the case forward as a result of Proto Script's failure to retain new counsel in accordance with the Court's March 6, 2018 Order.  *See* DE 27.  Consequently, Power Up requested leave to file a motion for entry of default judgment under Rule 55(b).  Judge Hurley granted that application on September 30, 2020.  *See* September 30, 2020 Electronic Order.

Thereafter, Power Up requested that a Certificate of Default be entered by the Clerk of the Court.  The Certificate was entered on October 1, 2020, pursuant to Rule 55(a).[3]  *See* DE 28-29.  Power Up moved for entry of default judgment against Proto Script on October 2, 2020. *See* Pl.'s Not. of Mot. [DE 30].  Its counsel submitted an Affidavit of Service demonstrating that

---

[3] As discussed later in this Report and Recommendation, because defendant Proto Script filed an answer in this case, the appropriate avenue for relief at the outset was a motion under Rule 37 for sanctions in the form of entry of a default.

5

Proto Script was served with notice of the instant motion. DE 30-7. Power Up's motion seeks an award of $305,250 in damages. *Id*. In support of the motion, Power Up also filed a Memorandum of Law [DE 30-6] and the Affidavit of Curt Kramer, CEO of Power Up [DE 31-1], along with exhibits attached to that affidavit.

Judge Hurley referred the motion to this Court for a Report and Recommendation as to whether the motion should be granted and, if so, the appropriate amount of damages, costs, and/or fees, if any, to be awarded. *See* October 2, 2020 Electronic Order. Following the referral, the Court requested that Power Up confirm that it was not seeking attorneys' fees and costs in connection with its motion since that issue was not clear. *See* March 2, 2021 Electronic Order. Power Up confirmed that it is not seeking attorneys' and costs on March 2, 2021. DE 31. On June 24, 2021, Power Up further clarified that it is only seeking entry of default judgment on its "Promissory Notes Defaults" claim and not the remaining claims pleaded in the Complaint. *See* DE 32.

### III.   STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 16(f) and 37(b), "[a] court may impose a range of sanctions on a party which fails to appear at conferences or to comply with scheduling and other pretrial orders including, among other things, striking pleadings and rendering a default judgment." *Allstate Ins. Co. v. Yehudian*, No. 14-CV4826, 2018 WL 1767873, at *4 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018) (citing *Trustees of the Paper Products, Miscellaneous Chauffers, Warehousemen & Helpers Union Local 27 Welfare Trust Fund & Pension Fund v. J & J Int'l Logistics, Corp.*, No. 12-CV- 1475, 2013 WL 5532710, at *2 (E.D.N.Y. Oct. 4, 2013) (citing Fed. R. Civ. P. 16(1)(A)-(C); 37(b)(2)(A)(vi))); *Abante Rooter and Plumbing, Inc. v. Shore Funding Sols., Inc.*,

6

CV 17-6499, 2019 WL 2436239, at *3 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1986606 (E.D.N.Y. May 6, 2019).

Rule 37 states, in pertinent part, as follows:

(b) Failure to Comply with a Court Order.

\* \* \*

(2) Sanctions Sought in the District Where the Action is Pending.

  (A) For Not Obeying a Discovery Order.  If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following:

\* \* \*

  (iii) striking pleadings in whole or in part;

\* \* \*

  (v) dismissing the action or proceeding in whole or in part;

  (vi) rendering a default judgment against the disobedient party. . . .

Rule 37(b)(2); *RJ Kitchen Assoc. Inc. v. Skalski*, CV 16-1436, 2018 WL 5456672, at *5 (E.D.N.Y. Aug. 2, 2018).

"It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order." *Martinez v. City of New York*, No. 16-CV-0079, 2018 WL 604019, at *19 (E.D.N.Y. Jan. 24, 2018) (quoting *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995)). "Courts generally consider the following factors in determining whether to exercise their discretion to enter default judgment or to impose another dispositive sanction: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences

7

of non-compliance.'" *Id.* at \*22 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). "No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned." *Id.* at \*23 (citing *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

In addition, Rule 55(a) allows a court to enter a default judgment against a party for failing to ". . . otherwise defend." Fed. R. Civ. P. 55(a). Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment against a defaulting party. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 19-CV-414, 2020 WL 871220, at \*2 (N.D.N.Y. Feb. 21, 2020). First, the plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, "the plaintiff [can] seek judgment by default under Rule 55(b)" upon obtaining a notation of default. *Priestley*, 647 F.3d at 505. The decision to grant a motion for default judgment is left "to the sound discretion of the district court." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citation omitted).

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-CV-2451, 2014 WL 3887515, at \*2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC,* No. 12-CV-5986, 2014 WL 4536715, at \*4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc.*, 973

8

F.2d at 158). However, "[j]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Taylor v. 312 Grand St. LLC*, No. 15-CV-5410, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) (citation omitted); *see also Local 1922 Pension Fund v. Broadway Elec. Supply, Co.*, No. 19-CV-2344, 2020 WL 1931635, at *4 (E.D.N.Y. Mar. 18, 2020) (citation omitted). Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see also A. & R. Lobosco, Inc. v. Superior Trading, Inc.,* No. 15-CV-3737, 2016 WL 5723982, at *2 (E.D.N.Y. Sept. 14, 2016), *report and recommendation adopted*, 2016 WL 5719720, at *1 (E.D.N.Y. Oct. 3, 2016) ("[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *LG Capital Funding, LLC v. FLASR, Inc.*, 422 F. Supp. 3d 611, 623 (E.D.N.Y. 2018) ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

In the event that liability is established, the court must thereafter ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to … determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105,

9

111 (2d Cir. 1997); *Tr. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448, 2020 WL 6927618, at *4 (E.D.N.Y. Nov. 3, 2020), *report and recommendation adopted in part*, No. 17-CV-3448, 2020 WL 6902364, at *1 (E.D.N.Y. Nov. 24, 2020) (noting "the Court is not required to hold a hearing if the party seeking damages submits '[d]etailed affidavits and other documentary evidence' in support of its request.") (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993)).

IV. **DISCUSSION**

    A. **Choice-of-Law**

As an initial matter, the Court must determine what law should be applied to Power Up's substantive claim. *See D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015). The Complaint does not allege violations of a particular state's laws, and although Power Up submitted a Memorandum of Law which cites New York law, it did not conduct a choice-of-law analysis to determine which state law should appropriately apply to its substantive claim. Moreover, as a result of its failure to respond to the instant motion, Proto Script has not advocated for the application of a particular state's laws. Thus, since "neither party has offered a choice-of-laws analysis to determine which state law should apply to the claims in th[e] case," the choice-of-law rules of New York govern. *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05-CV-9640, 2009 WL 935665, at *9 (S.D.N.Y. Apr. 7, 2009) (noting that a district court sitting in diversity jurisdiction applies the choice-of-law rules of the state in which it sits); *see also EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020) ("A federal court sitting in diversity applies the choice of law rules of the forum state.") (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

In New York, "the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored ...." *Freedman v. Chemical Constr. Co.*, 43 N.Y.2d 260, 265 n.*, 372 N.E.2d 12 (1977); *Royal Dispatch Servs., Inc. v. UBS Fin. Servs., Inc.*, No. 12-CV-2032, 2012 WL 3113291, at *2, n.4 (E.D.N.Y. July 31, 2012) ("New York law generally honors contractual choice-of-law provisions."). Further, a choice of law provision in a contract "will be upheld so long as the selected state has sufficient contacts with the transaction, and if there is no violation of public policy or existence of fraud." *Opulen Ventures, Inc. v. Axcessa, LLC*, No. 12-CV-1776, 2013 WL 829230, at *1 (E.D.N.Y. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 828922 (E.D.N.Y. Mar. 6, 2013) (citing *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 393 (2d Cir. 2001)).

Here, Virginia law governs Power Up's substantive claim. The Instruments state that they "shall be governed by and construed in accordance with the laws of the State of Virginia, without regard to principles of conflicts of law." Promissory Note § 4.6, attached as Ex. A to Kramer Aff.; Purchase Agreement § 8(a), attached as Ex. B to Kramer Aff. Because Power Up is a Virginia corporation and the parties agreed to apply the state's laws, the Court finds sufficient contacts with the state of Virginia. *See Comprehensive Habilitation Servs., Inc.*, 2009 WL 935665, at *10 ("Here, relevant considerations weigh in favor of interpreting the provisions of the Factoring Agreement under Virginia law: defendant maintains its principal place of business in Virginia and the agreement specifies that Virginia is the forum of choice, which create sufficient contacts with Virginia ...."); *Power Up Lending Grp., Ltd. v. Corix Bioscience, Inc.*, No. 18-CV-2568, 2019 WL 1494613, at *4 (E.D.N.Y. Mar. 14, 2019), *report and recommendation adopted*, 2019 WL 1492913 (E.D.N.Y. Mar. 31, 2019) (applying Virginia law in diversity action where contract selected Virginia law and plaintiff corporation was a citizen of

11

Virginia); *Power Up Lending Grp., Ltd v. Danco Painting, LLC*, No. 15-CV-4537, 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016), *report and recommendation adopted*, 2016 WL 5349784 (E.D.N.Y. Sept. 23, 2016) (same); *Peri Formwork Sys., Inc. v. Vesta 50, LLC*, No. 10-CV-4773, 2013 WL 1334475, at *2 (E.D.N.Y. Mar. 11, 2013), *report and recommendation adopted*, 2013 WL 1334448 (E.D.N.Y. Mar. 29, 2013) (applying Maryland law in diversity suit where contract selected Maryland law and plaintiff corporation was a citizen of Maryland). Also, nothing in the record indicates a violation of public policy or fraud in connection with applying Virginia law. *See Danco Painting*, 2016 WL 5362558, at *4. Accordingly, the Court recommends that Virginia law be applied to Power Up's substantive claims.

**B.    Default**

Here, striking Proto Script's Answer and permitting default as a sanction is appropriate under Rule 37(b). Although Proto Script answered the Complaint and appeared at the Initial Conference through counsel, it: (1) did not comply with the Court's September 25, 2017 discovery scheduling order [DE 17] directing it to produce responses to discovery demands by a certain date; (2) did not retain new counsel as Judge Spatt directed in his March 6, 2018 Order; and (3) has not participated in this litigation since its counsel was permitted to withdraw on March 6, 2018. Moreover, Proto Script never responded to Power Up's request for entry of default, and failed to oppose Power Up's motion for entry of default judgment, despite having been served with the motion papers. Where, as here, a corporate defendant has been ordered to retain counsel and fails to do so, a sanction in the form of striking those defendants' Answers and entering default is appropriate. *See Northfield Ins. Co. v. Mannara Contracting Corp.*, No. 18-CV-6447, 2019 WL 5874063, at *2 (E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 4291652 (E.D.N.Y. Sept. 11, 2019) (striking defendant's answer and

imposing default as a sanction for its failure to participate in the litigation and to comply with court orders directing it to retain new counsel); *Allstate Ins. Co.*, 2018 WL 1767873, at *4 ("Moreover, where corporate defendants have been ordered to retain counsel and fail to do so, a sanction in the form of striking those defendants' Answers is appropriate.") (citing *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006)); *Allstate Ins. Co. v. Lopez*, No. 14-CV-4826, 2016 WL 11096618, at *3 (E.D.N.Y. Feb. 25, 2016), *report and recommendation adopted sub nom. Allstate Ins. Co. v. Irage Yehudian, M.D.*, 2016 WL 4129104 (E.D.N.Y. Aug. 2, 2016) ("Where a corporation has failed to appear through counsel, contrary to a district court order, it is appropriate to enter default judgment against it."); *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (upholding default judgment where individual and corporate defendants did not obtain counsel in the time frame ordered by the court); *Bonworth, Inc. v. Runway 7 Fashions, Inc.*, No. 17-CV-9712, 2021 WL 2333240, at *2 (S.D.N.Y. June 8, 2021) ("Because proof of service of the motion for default judgment and the Court's prior orders has been filed, no counsel has appeared for Bonworth, Bonworth has failed to file any opposition to Runway's motion for default judgment, Bonworth has failed to pursue this case, and Runway has proffered evidence sufficient to support their claims, the Court enters a default judgment for Runway against Bonworth.").

Therefore, the Court will proceed to assess the issues of liability and damages to determine whether an entry of default judgment against Proto Script is appropriate.

### C. Liability

Power Up seeks default judgment on its claim for Proto Script's default on the Note. "Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim." *Corix Bioscience,* 2019 WL 1494613, at *4 (citing *Premier Bank, Inc. v. Tech.*

13

*Res., Inc.,* No. 13–CV–340, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013)). To establish a breach of a contract under Virginia law, a plaintiff must plead: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Johnson v. Robert Shields Interiors, Inc.*, No. 15-CV-820, 2016 WL 2739270, at *6 (E.D. Va. May 11, 2016) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517, 758 S.E.2d 55, 60 (2014)). To bring an action to enforce a note, such note must "be signed by the party who is to be charged thereby, or his agent." *Corix Bioscience,* 2019 WL 1494613, at *4 (citing Va. Code Ann. § 8.01–27).

As an initial mater, the Note may be enforced against Proto Script in this action because it is signed by Proto Script's CEO and President. *See* Promissory Note, Ex. A. to the Kramer Aff. at 12. Moreover, all three elements of a breach of contract claim have been pleaded. As to the first element, Power Up asserts that the Note obligated Proto Script to remain current in its filing requirements under the Exchange Act of 1933. Compl. ¶ 14; Kramer Aff. ¶ 6. Specifically, under Section 3.8 of the Note, Power Up's failure to comply with the reporting requirements of the Exchange Act of 1933 constitutes an event of default. *See* Promissory Note, Ex. A. to the Kramer Aff., at 8. With respect to the second element, Power Up asserts that Proto Script did not comply with the reporting requirements of the Exchange Act of 19833 by failing to file its Form 10K Annual Report with the Securities and Exchange Commission (the "SEC") covering the period ending December 31, 2017, which was due to be filed by March 30, 2017. Compl. ¶ 15; Kramer Aff. ¶ 7. Lastly, with respect to the third element, Power Up asserts that Proto Script caused it damages in an amount equal to 150% of the principal balance of $203,500 on the Note. *Id.* ¶¶ 3, 18.

14

Because Power Up has made the necessary factual averments to establish liability against Proto Script for a breach contract claim, the Court respectfully recommends to Judge Hurley that Power Up's motion for entry of default judgment be GRANTED.

**D.     Damages**

Having determined that the Complaint establishes liability for breach of contract, the Court must next assess to a "reasonable certainty" the damages to which Power Up is entitled on this claim.  In support of its motion, Power Up has submitted the Kramer Affidavit as well as a copy of the Note and underlying Agreement.  *See generally* Promissory Note, Ex. A to the Kramer Aff.; Securities Purchase Agreement, Ex. B to the Kramer Aff.  These submissions are sufficient to satisfy Power Up's evidentiary burden without a hearing.  *See LG Capital Funding LLC,* 2018 WL 1372066 at *4 (granting damages based on plaintiff's submission of a declaration and the underlying notes); *Castcapa Constr., Ltd. Liab. Co. v. TMB Servs. Ltd. Liab. Co.*, No. 17-CV-1023, 2017 WL 9511080, at *2 (E.D.N.Y. July 24, 2017) (same), *report and recommendation adopted as modified by*, 2018 WL 623546 (E.D.N.Y., Jan. 30, 2018).

Relying on a liquidated damages clause under Article III of the Note, Power Up contends that it is entitled to $305,250 as a result of Proto Script's default under the Note, which represents 150% of the outstanding principal.  Kramer Aff. ¶¶ 8-9.  Without any supporting legal authority, Power Up maintains that these damages are due under the Note as "liquidated damages and not as a penalty."  *Id.* ¶ 9.  "Generally, parties to a contract may agree in advance about the amount to be paid as compensation for loss or injury which may result from a breach of the contract '[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss.'"  *301 Dahlgren Ltd. P'ship v. Bd. of Supervisors of King George Cty. For &*

15

*on Behalf of Dahlgren Sanitary Dist.*, 240 Va. 200, 202–03, 396 S.E.2d 651, 653 (1990) (quoting *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 747 (1987)). "However, when the damages resulting from the breach are susceptible of definite measurement or when the agreed amount would be grossly in excess of actual damages, courts usually construe such an agreement to be an unenforceable penalty." *Id*. (citing *Taylor*, 233 Va. at 75, 353 S.E.2d at 747); *accord Brooks v. Bankson,* 248 Va. 197, 208, 445 S.E.2d 473, 479 (1994).

Here, the Court need not resolve whether the liquidated damages clause relied upon by Power Up constitutes an unenforceable penalty because the amount of damages Power Up seeks is significantly less than that provided for under either the plain terms of the Note or the liquidated damages clause of the Note. The plain terms of the Note provide a basis for awarding Power Up the outstanding principal, regular interest, and default interest. *See* Promissory Note, Ex. A to the Kramer Aff., at 1. Under the terms of the Note, Proto Script agreed to pay the sum of the principal together with 12% interest per annum until the principal becomes due, and default interest at a rate of 22% per annum upon an event of default. *Id*. Based on these terms, the Court independently calculated that Proto Script would owe Power Up $401,896.98 (outstanding principal [$203,500] + regular interest [$18,532.44] + default interest [$179,864.54]).[4] Alternatively, the liquidated damages clause under Article III of the Note

---

[4]  The original face value of the Note was $203,500. *See* Promissory Note, Ex. A to the Kramer Aff., at 1. Proto Script failed to make any payments on the Note after it was issued and thereafter became due. Kramer Aff. ¶ 8. Therefore, on the default date, the full amount of the principal remained outstanding. Between January 31, 2017, the date the Note was issued, and November 3, 2017, the maturity date, the Note accrued regular interest on the unpaid principal balance at a rate of 12% per annum.

In order to calculate the *regular* interest accrued, the Court first determined that 277 days elapsed between January 31, 2017 and November 3, 2017, including the end date. The following calculations were then performed to determine *regular* interest owed:  $203,500

16

provides that, in the event of default, Power Up is entitled to 150% of the total sum of the outstanding principal, plus regular interest, plus default interest. *See id.* at 9, Ex. A to the Kramer Aff. Based on these terms, the Court independently calculated that Proto Script would owe Power Up $602,845.47 (1.5 [150%] x $401,896.98 [outstanding principal + regular interest + default interest]). Power Up requests $305,250 in damages, which is roughly 25% less than that provided for under the Note's plain terms and 66% less than that provided for under the Note's liquidated damages clause.

Therefore, the Court respectfully recommends to Judge Hurley that Power Up be awarded $305,250 in damages.

V. **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends to Judge Hurley that Power Up's motion for entry of default judgment be GRANTED against Proto Script and that Power Up be awarded damages in the sum of **$305,250**.

---

[principal] x .12 [regular interest rate] = $24,420 x 277/365 [number of days interest is due] = $18,532.44.

With respect to *default* interest, between November 3, 2017 and the date of the original Report and Recommendation (*i.e.*, July 9, 2021), default interest accrued on any amount of principal and interest owed on the Note ($203,500 + $18,532.44 = $222,032.44), at a rate of 22% per annum. In order to calculate the *default* interest accrued, the Court first determined that 1344 days have elapsed from the maturity date to the July 9, 2021 date of the original Report and Recommendation. The following calculations were then performed to determine the default interest owed: $222,032.44 [balance of principal and/or interest] x .22 [default interest rate] = $48,847.14 x 1344/365 [number of days interest is due] = $179,864.54.

Based on these calculations, the total amount owed under the Note as of the original July 9, 2021 Report and Recommendation is $401,896.98 ($203,500 + $18,532.44 + $179,864.54).

17

**VI.    OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation to file written objections.  *See* Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  Any objections by a *pro se* party shall be filed with the Clerk of the Court by overnight mail or regular mail.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *E.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant forthwith by overnight mail and first-class mail and to file proof of such service on ECF by August 25, 2021**.

**SO ORDERED.**

Dated: Central Islip, New York
      August 20, 2021

                                      /s/ A. Kathleen Tomlinson
                                      A. KATHLEEN TOMLINSON
                                      U.S. Magistrate Judge